UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LEE BLANKS, | § |
| Plaintiff, | § § § |
| v. | § CIVIL ACTION NO. H-06-2904 |
| JO ANNE B BARNHART, Commissioner of Social Security Administration, | § § § § § |
| Defendant. | § § |

## MEMORANDUM AND ORDER

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for a review of a final decision of the Commissioner of the Social Security Administration. In particular, Plaintiff complains of the denial of his claim for a period of disability and for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Plaintiff has filed a motion for summary judgment.

For the reasons that follow, the Court finds and concludes that Plaintiff's Motion for Summary Judgment, Docket No. 11, should be **DENIED.**

I. BACKGROUND

Plaintiff Lee E. Blanks was insured for disability benefits under Title II of the Social Security Act through December 31, 2003 (his "last-insured date"). In July 2003, Plaintiff applied for disability benefits on the basis of osteoarthritis affecting Plaintiff's upper and lower spine, diabetes mellitus with accompanying lesions and fatigue, hypertension, obesity, status post

1

a gunshot wound to his pelvis, and associated restrictions of activity and severe pain. His claim was denied both initially and upon reconsideration.

A hearing was held on the issue of Blanks' claim before an administrative law judge ("ALJ") on May 18, 2005 in Houston, Texas. Blanks, then fifty-five years old and possessing a tenth grade education, testified at the hearing, as did two witnesses, Lena Gilmore, Plaintiff's friend, and Robert Cox, a vocational expert ("VE").[1]

During the hearing, Blanks described numerous physical complications resulting from his diabetes, including fatigue and memory loss, and explained that his frequent need to miss work due to fatigue and doctors' appointments had caused difficulty for him in his relationships with his past employers. He described how his high blood pressure caused nausea and dizziness, although he also noted that medication has controlled this problem. He described the persistent pain he feels in his neck and back, the result of a bullet that has been lodged next to his spine since he was shot during military service in the early 1970s, and of being hit by a car a few years later. Blanks described his neck and back injuries as preventing him from sleeping on his side, and from sitting, standing, or walking for extended periods of time. He also described these injuries as causing an occasional loss of sensation in his right hand that prevents him from picking up objects and an occasional loss of sensation in his legs that causes him to fall. Finally, Blanks described persistent shoulder pain that limits his mobility and activities.

When asked about his daily activities, Blanks testified that he does light housework, such as washing dishes, doing laundry, and taking out the garbage. He also testified that he mows the lawn with a self-propelled lawnmower, but that his injuries force him to take lengthy breaks.

Gilmore's testimony focused on Blanks' mental functioning, describing Blanks as prone to confusion and forgetful, particularly when agitated. Her testimony also corroborated many of

---

[1] Robert Cox was appointed to testify by the ALJ (R. at 29).

Blanks' descriptions of his physical impairments. She testified that Blanks has difficulty dressing himself and sleeping due to pain, suffers from lethargy and dizzy spells, and has difficulty manipulating small objects with his fingers.

All parties to the hearing agreed that Blanks' past relevant work consisted of work as a prison guard and as a mall security guard. Under questioning from the ALJ, Cox, the VE, testified that this work contains no job skills that would be transferable to sedentary work. Cox further testified that, if Blanks' testimony were deemed credible in its entirety, the limitations Blanks described would preclude any work at all, but that a person of Blanks' age and education, if able to do light work, would have many unskilled jobs available to him both regionally and nationally. When asked by Blanks' attorney to add to his analysis the limitation of frequent rests during the day or the need to miss three days of work each month, however, Cox stated that such a person would likely be ineligible for competitive employment.

In a decision issued on June 18, 2005, the ALJ denied Blanks' claim for disability benefits. R. at 16–24. He found that Blanks did have "severe" impairments under the requirements of 20 C.F.R. § 404.1520(c), specifically, status post a gunshot wound to his pelvis, diabetes mellitus, hypertension, and degenerative disc disease. However, the ALJ determined that these impairments did not meet or medically equal any of the listed impairments specified in the Social Security regulations, either singly or in combination. Proceeding to the required analysis of Blanks' residual functional capacity ("RFC"), the ALJ disagreed with Blanks' assessment of his own capacity, finding that Blanks' allegations regarding the extent of his limitations were not totally credible. Similarly, the ALJ pointed out that Gilmore's testimony as to Plaintiff's memory loss and confusion is difficult to reconcile with Plaintiff's having never voiced any such complaint to his treating sources. The ALJ found that Plaintiff retained the RFC

to perform light work, meaning that he could lift and/or carry ten pounds frequently and twenty pounds occasionally, could stand and/or walk off and on for a total of about six hours in an eight-hour work day, and could sit off and on for a total of about six hours in an eight-hour work day. Based on this RFC and the testimony of the VE, the ALJ concluded that, as of his last-insured date, Blanks could perform his past relevant work as a mall security guard, and that he was not under a disability. The ALJ therefore denied benefits due to Blanks' failure to show that he suffered from a disability as defined in the Social Security Act before his last-insured date.

The Appeals Council of the Social Security Administration denied review of the ALJ's decision in March 2006. Plaintiff filed the instant case in September 2006, maintaining that the ALJ erred in denying his claim for benefits.

## II.   ANALYSIS

### A.   Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. See Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This Court must view all evidence in the light

most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Id. at 255.

B.  **Standard of Review**

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" Id. (internal quotation marks omitted) (citing Hemphill v. Weinberger, 483 F.2d 1137 (5th Cir. 1973); Payne v. Weinberger, 480 F.2d 1006 (5th Cir. 1973)).

C.  **Legal Standard**

A disability claimant bears the initial burden of proving that he is disabled. See 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). A person claiming a disability must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, "[a] claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured." Ivy v. Sullivan, 898 F.2d

1045, 1048 (5th Cir. 1990). In the instant case, Plaintiff bears the burden of demonstrating that a qualifying medical impairment began on or before December 31, 2003.

The Court evaluates a disability claim via a five-step process, as follows:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994) (citing Villa, 895 F.2d at 1022). "A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

### D. Plaintiff's Contentions

Before this Court, Plaintiff makes four different arguments as to why the ALJ's decision should be reversed or, at the least, remanded. First, Plaintiff argues that the ALJ erred in finding that Plaintiff is not presumptively disabled pursuant to Appendix 1, Subpart P, Regulation No. 4 of the Code of Federal Regulation ("Listing 1.04"). Second, Plaintiff argues that the ALJ's analysis of Plaintiff's RFC failed to give adequate consideration to all of Plaintiff's impairments and his subjective symptoms of pain. Third, Plaintiff argues that substantial evidence does not exist to support the ALJ's finding that Plaintiff could perform his past relevant work as a security guard. Fourth, Plaintiff argues that the ALJ erred in not entering a finding of disabled pursuant to Appendix 2, Subpart P, Regulation No. 4 of the Code of Federal Regulation ("Medical-Vocational Rules") on the theory that Plaintiff can no longer perform past work, and his RFC, age, education, and past work, in combination, make him unable to perform other work.

E.     The Evidence Before the ALJ

1.     **The ALJ's Finding That Plaintiff Does Not Meet the Requirements of Listing 1.04**

Plaintiff argues that the ALJ erred in finding that the Plaintiff is not presumptively disabled pursuant to Listing 1.04. Specifically, Plaintiff argues that the ALJ should have found that Plaintiff met the requirements and severity of impairment contemplated by Listing 1.04A, or in the alternative, that Plaintiff's impairments are equal in duration and severity to Listing 1.04A. Listing 1.04A requires a claimant with a disorder of the spine, including osteoarthritis, to show both "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test . . . ."

The ALJ properly rested his finding that Plaintiff does not meet the requirements of Listing 1.04 on the reports of two physicians. In December 2002, treating physician Dr. Mark Kriet found Plaintiff's range of motion of the lumbar spine to be normal and Plaintiff to have only slight weakness (four on a five-point scale) in the lower left extremity. Dr. Kriet's notes do not reflect any evidence of sensory loss. R. 142. In September 2003, examining physician Dr. Suresh Nukala found Plaintiff's cervical spine to be normal and Plaintiff to have nearly normal muscle strength (four-plus on a five-point scale) throughout his extremities. Dr. Nukala further found Plaintiff to walk with a normal gait and perform heel-to-toe walking without difficulty. As with Dr. Kriet's report, Dr. Nukala's notes offer no evidence of sensory loss. R. 191. It is true, as stated by Plaintiff, that the ALJ did not directly discuss Plaintiff's positive straight-leg raising test during his examination by Dr. Nukala. Pl.'s Mot. Summ. J. and Supp. Br. at 9. This omission, however, does not constitute a reversible error. Under Listing 1.04A, Plaintiff must show *both* evidence of nerve root compression *and* a positive straight-leg raising test; the ALJ's

finding that Plaintiff has failed to show the former renders any inquiry into the latter unnecessary. More importantly, however, this Court's limited review does not require that the ALJ discuss every piece of evidence in the record; it only requires that substantial evidence exist to support the ALJ's finding. In light of the two uncontradicted physician reports relied upon by the ALJ, it is inarguable that substantial evidence exists to support a finding that Plaintiff is not presumptively disabled under Listing 1.04, even when Plaintiff's alleged impairments are considered in combination.

        **2.    ALJ's Analysis of Plaintiff's RFC**

Plaintiff argues that the ALJ's analysis of Plaintiff's RFC as of December 31, 2003 failed to give adequate consideration to all of Plaintiff's impairments and his subjective symptoms of pain. The ALJ's opinion, however, discusses each of Plaintiff's impairments in turn, and dismisses Plaintiff's subjective symptoms of pain only after noting a long series of inconsistencies between Plaintiff's testimony and the objective medical evidence in the record. The evidence cited by the ALJ, which includes Plaintiff's testimony about his ability to do housework, Plaintiff's own subjective statements to treating sources on multiple occasions that he was "feeling well" or "doing well," Plaintiff's inconsistent complaints to his physicians regarding his various impairments and pain, and Plaintiff's testimony that he takes no significant pain medication, provides substantial evidence to support the ALJ's RFC finding.[2]

---

[2] Plaintiff argues that the ALJ's statement that "None of the records from the claimant's treating or examining sources offers a specific assessment of his work-related limitations" is factually erroneous, pointing to a passage in Dr. Nukala's September 2003 report noting that Plaintiff can only lift five pounds at a time (Pl.'s Mot. Summ. J. and Supp. Br. at 10). The Court notes that the passage of Dr. Nukala's report cited by the Plaintiff is not the finding of Dr. Nukala, but instead the doctor's notes on Plaintiff's own subjective complaints: the sentence reads, "The patient states that he can . . . lift only up to 5 pounds of weight." Nothing in Dr. Nukala's own assessment corroborates this complaint (see R. at 190-91).

### 3. The ALJ's Finding That Plaintiff Can Perform His Past Relevant Work

Plaintiff argues that substantial evidence does not exist to support the ALJ's finding that Plaintiff can perform his past relevant work as a mall security guard. Cox, the VE who testified at the hearing, determined Plaintiff's past relevant work to be that of a prison guard and a mall security guard, which he classified as medium and semi-skilled, and light and semi-skilled, respectively. R. 102. The Court has already found, above, that the ALJ's RFC determination that Plaintiff was capable of light work as of his last-insured date was based on substantial evidence. That determination, combined with the VE's uncontradicted expert testimony that Plaintiff's past relevant work is properly classified as light, provides substantial evidence to support the ALJ's determination that Plaintiff was capable of performing his past relevant work as a mall security guard as of his last-insured date.

### 4. Medical-Vocational Rule 201.10

Plaintiff argues that the ALJ erred by not entering a finding of disabled pursuant to Medical-Vocational Rule 201.10 on the theory that Plaintiff can no longer perform past work, and that his RFC, age, education, and past work, in combination, make him unable to perform other work. Medical-Vocational Rule 201.10 requires that, when an individual can no longer perform his or her past relevant work, Social Security will consider the individual's RFC, age, education, and past work experience to determine if the individual can do other work. However, because the ALJ's determination that Plaintiff retained the ability to perform past relevant work as of his last-insured date was based on substantial evidence, Medical-Vocational Rule 201.10 is inapposite.

## III. CONCLUSION

The Court finds that the ALJ's decision was based on substantial evidence. Plaintiff's Motion for Summary Judgment is **DENIED**. The case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

SIGNED at Houston, Texas on this 4th day of September, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT